UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BORDELON MARINE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3046** |
| **LASHIP, LLC, ET AL** | **SECTION "L" (5)** |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

This suit arises out of alleged damages to the M/V Shelia Bordelon when the M/V Joshua Chouest, owned by Reel Pipe LLC (Reel Pipe) and cold stacked (stored long term) at the LaShip, L.L.C. docking facility (LaShip) became unmoored on August 29, 2021, when Hurricane Ida made landfall, and crashed into the M/V Shelia Bordelon. Bordelon Marine, Inc (Bordelon), owner of the Shelia, seeks damages including cost of repair and other incidental and related expenses. Defendants, Reel Pipe LLC and LaShip deny liability and assert that all damages were caused by Hurricane Ida, a fortuitous event, force majeure, or Act of God. These alternate views created a question of fact which must be resolved at trial. Consequently, this matter came on for trial before the Court, without a jury, on October 30, 2023.

After considering all of the testimony, exhibits introduced into evidence, and the applicable admissible portions of the record, the court issues the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court finds it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court finds it as such.

### FINDINGS OF FACT

**A. The Parties and Relevant Vessels:**

1

1. LaShip L.L.C. (LaShip) is a vessel docking facility and shipyard located in Houma, Louisiana and bounded on the West by the Houma Navigational Canal and the South by a dead end canal known as the Munson Slip.

2. Reel Pipe, LLC (Reel Pipe) owned the M/V Joshua Chouest at all relevant times, including August 29, 2021.

3. Offshore Service Vessels Inc. did not own, manage or operate the Joshua Chouest and did not operate the LaShip facility on August 29, 2021.

4. The Joshua Chouest, official #1203475, was at all relevant times herein an offshore supply vessel owned by Reel Pipe that was moored at LaShip's facility during Hurricane Ida. The Joshua Chouest is an ABS "Maltese Cross A1" class vessel rated at 131 long tons deadweight (empty) and 4.4577 long tons at full cargo load. She measures 288 feet in length and 66 feet across the beam. The Joshua Chouest had no crew aboard and had been docked at the LaShip facility at its dock on the Munson Slip since July 10, 2018.

5. The Shelia Bordelon is owned by Bordelon Marine Inc. She is an ultra-light intervention vessel (ULIV) measuring at approximately 2312 gross tons and was moored at Bordelon's dock on the Munson canal directly across from the Joshua Chouest.

**B.  The Incident:**

1. Hurricane Ida made landfall on August 29, 2021, as a category 4 hurricane with estimated winds of 150 miles per hour.

2. On the afternoon of August 29, 2021, the Joshua Chouest broke her mooring lines drifted across the Munson Slip and forcefully struct the Shelia Bordelon. After colliding with the Shelia Bordelon at about 4:28 pm, on August 29, 2021, the unmanned Joshua Chouest continued to bang against and made repeated contact with the Shelia Bordelon.

**C. Pre-Incident Occurrences and Preparations for the Storm:**

1. The Joshua Chouest transited to LaShip to be "cold stacked" in July of 2018, nearly 3 years before the storm. In order to get to the LaShip facility, the Joshua Chouest was deballasted and had minimal fuel and almost no liquid in any tanks due to the shallow depths along the transited route and within the LaShip facility. At all times pertinent here the Joshua Chouest remained deballasted in order to remain afloat at LaShip's facility.

2. Reel Pipe delegated care, custody, and control of the Joshua Chouest to LaShip and did not man, attend, inspect, moor or otherwise oversee the Joshua Chouest between the day of her arrival at the LaShip facility on July 10, 2018 and the arrival of Hurricane Ida on August 29, 2021.

3. LaShip had no licensed mariners working at its facility. It used its regular employees including carpenters, painters, and pipefitters to select and arrange the mooring lines for the vessels docked at the facility which, at the time of the storm numbered 19 vessels.

4. The Joshua Chouest was berthed directly against the south bulkhead of the LaShip facility along the Munson Slip. She was moored starboard to the dock with 15 lines, ten of which were rope lines and five wire cables. At the time of Hurricane Ida, the Joshua Chouest was secured to six mooring structures by two wires at the bow and three wires along the broadside length of the vessel. One of those wires was attached to a padeye at the bow which was almost horizontal to the shoreside mooring bitt. The wires were supplemented with four ropes at the bow, four ropes at the stern, and two ropes along the broadside length of the vessel. The ropes were an eight-strand braised polypropylene and polyethylene rope with a nine-inch circumference (approximately two and a half inches in diameter). This type of rope had a measured breaking strength of 129,370 lbs. The steel wire was one inch in diameter and had a measured breaking strength of 162,800 lbs. The lines were attached to mooring structures which were located on the dock about ten feet from the

water's edge. They are single pile structures consisting of twenty-four-inch diameter pipe driven vertically into the seabed filled with concrete and extending approximately six feet above ground with a cross bar approximately four feet above ground.

5. On August 29, 2021, Hurricane Ida made landfall in Southeast Louisiana as a category 4 storm. The storm center traveled slowly northwest while its eyewall, the area of highest winds, passed over the LaShip facility on the Houma Navigational Canal. The data, research, and findings indicate that the LaShip location was exposed to winds gusting between 125 and 135 mph during a ninety-minute period on the afternoon of August 29, 2021. Wind direction, while initially from the northeast, became northerly, then northwest and finally westerly as the center of Ida passed to the east of LaShip. The force of the wind over the exposed length of the Houma Navigation Canal was creating waves up to six feet high traveling south in the channel. *See* Expert Report of Meteorologist E. Craig Setzer, Exhibit 42.

6. Based on visual accounts, a computer program known as Optimore, and as the eyewitness videos indicate, the mooring lines that secured the bow of the Joshua Chouest were over stressed and parted. *See* Testimony of Thomassie, page 11, line 7. Defendants' expert, William Thomassie indicates that the forward most wire closest to the bow failed first and then the second wire failed. Thereafter, the third wire failed, and the winds increased causing the fourth wire to fail. He believes that the remaining mooring lines and wire held until the wind speed reached between 126 and 135 mph. The testimony is that the total wind force on the vessel was 479,000 pounds. At that point the rope lines at the bow were fully extended and reach their breaking strength and failed while the mooring lines that held the stern remained secure, allowing the vessel's bow to rotate to the port side away from the bulkhead and collide with the Bordelon vessel.

7. The Lilly Bordelon was moored at the Bordelon dock nearest to the Houma Navigational Canal and was unmanned both prior to and throughout the passing Hurricane Ida.

8. The Gerry Bordelon and Marcelle Bordelon were also moored at the Bordelon dock abreast of the Shelia Bordelon.

9. All of these Bordelon vessels remained securely moored throughout the passing of Hurricane Ida on August 29, 2021. Defendants' expert William Thomassie attributes this to the fact that the direction of the winds pushed the Bordelon vessels toward the Bordelon dock whereas the same winds pushed the Joshua Chouest away from the dock toward the Shelia Bordelon.

10. Defendant's expert Thomassie, the only expert who testified on the manner in which the Joshua Chouest was moored, was asked about whether there was anything wrong about mixing steel wires with rope lines and he testified as follows: "Not in the way they were handled in this case, no." He went on to explain: "If I had steel wires and soft synthetic lines and I had two going from the same point in the vessel to the same point onshore, then that's a very general mixed mooring that just will not perform as well as you would expect. You don't get the sum of the two lines. But in this case, all the synthetic mooring lines were in one position doing one thing, and all of the steel mooring lines were more of less supplemental and in a different area doing something a little bit differently. So, to me, even though they were using both steel and synthetic in this instance, based on the evaluation, it wasn't detrimental." No one contradicted his testimony.

11. Initially a question was raised about the angle of the mooring lines. Thomassie testified as follows: "It's a trade-off. The preferred angle, fleeting angle of the line would be less than–you wouldn't want it to be vertical. You would want it to be more horizontal than vertical, but at what expense. If you stretch out the line to the next available bollard and you have a better angle, now you've got a longer line, and it's, again, more compliant and would provide less load resistance.

5

So, just because it's at a better angle doesn't necessarily make it a better solution." Testimony, page 10, line 23

12. Finally, Thomassie concluded that LaShip did everything that was appropriate to prepare the Joshua Chouest for Hurricane Ida. "If not for the speed of the winds, the strength of the storm, I think that would have been an adequate mooring pattern for most conditions." Testimony, page 61, line 8.

## **CONCLUSIONS OF LAW**

### I. Jurisdiction

1. This case arises under the Court's admiralty and maritime jurisdiction within the meaning of 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules for in rem actions. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2).

### II. Negligence

2. Under general maritime law, a party asserting negligence must show the following to succeed: (1) duty; (2) breach of duty; (3) proximate cause; and (4) actual damage. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)). The determination of a tortfeasor's duty is a question of law. *In re Signal International, LLC*, 579 F.3d 478, 490 (5th Cir. 2009). "That determination [of a tortfeasor's duty] involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). The duty owed under maritime law is one of ordinary care under the circumstances. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 211.

### III. Maritime Presumptions and the Act of God Defense

3. "Liability for collisions on the navigable waters is [often] governed by a series of presumptions and burden-shifting principles." *Illinois Constructors Corp. v. Logan Transp., Inc.*, 715 F. Supp. 872, 879 (N.D. Ill. 1989).

4. The *Oregon* Rule establishes a presumption of fault upon a moving vessel that allides with a properly moored vessel or other stationary structure. *The Oregon*, 158 U.S. 186, 192 (1895); *In re Mid-South Towing Co.*, 418 F.3d 526, 531 n.5 (5th Cir. 2005) (distinguishing the *Oregon* Rule from the *Pennsylvania* Rule because the *Oregon* Rule is a presumption of fault more "akin to the common law doctrine of *res ipsa loquitor*" while the *Pennsylvania* rule is a presumption of causation as a result of a statutory violation).

5. The *Louisiana* Rule "creates a rebuttable presumption that in collisions or allisions involving a drifting vessel, the drifting vessel is at fault." *Combo Maritime, Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 602 (5th Cir. 2010) (citing *James v. River Parishes Co., Inc.*, 686 F.2d 1129, 1131-32 (5th Cir. 1982); *The Louisiana*, 70 U.S. 164, 173 (1865).

6. Courts treat the *Louisiana* and *Oregon* presumptions "similarly, looking to law on one to inform decisions on the other." *Combo Maritime*, 615 F.3d at 605 (citing *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 593 (11th Cir. 2007)).

7. To rebut the foregoing presumptions, a party "can demonstrate (1) that the allision was the fault of the stationary object; (2) that the moving vessel acted with reasonable care; or (3) that the allision was an unavoidable accident. . . . Each independent argument, if sustained, is sufficient to defeat liability." *Id.* (quoting *S/Y NERAIDA*, 508 F.3d at 493). The rebutting party must make such showing by a preponderance of the evidence. *Brunet v. United Gas*

*Pipeline Co.*, 15 F.3d 500, 503 (5th Cir. 1994) (citing *American Petrofina Pipeline Co. v. M/V Shoko Maru*, 837 F.2d 1324, 1326 (5th Cir. 1988)).

8. A party invoking the Act of God defense does so pursuing that third argument, by showing "that the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills[.]'" *James*, 686 F.2d at 1133 (quoting *Petition of United States*, 425 F.2d 991, 995 (5th Cir. 1970)).

9. Noting that the "common sense behind the rule makes the burden a heavy one," the Fifth Circuit has required vessels asserting the Act of God defense to "exhaust every reasonable possibility which the circumstances admit and show that in each they did all that reasonable care required." *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977) (quoting *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967)).

10. To successfully invoke the defense, a party must show that the weather was heavy *and* that they took "reasonable precautions under the circumstances as known or reasonably to be anticipated." *Petition of the United States*, 425 U.S. at 995. Therefore, a hurricane in and of itself is not sufficient to invoke the Act of God defense. *See, e.g.*, *In re Skanska*, 577 F. Supp. 3d 1302, 1323 (N.D. Fla. 2021) (finding that the barge owner "received ample warning about Hurricane Sally's approach" and its failure to relocate its barges to available, safer alternative locations constituted negligence and the vis major defense was thus unavailable to it); *Paragon Asset Co. Ltd. v. Gulf Copper & Manufacturing Corp.*, 622 F. Supp. 3d 360, 403-04 (S.D. Tex. 2022) (noting that while Hurricane Harvey undeniably brought bad weather, the Act of God defense was inapplicable because the vessel owner's

"delayed decision and inadequate mooring system represented unreasonably deficient actions").

11. The Fifth Circuit has stated that liability "must turn on whether the [vessel] causing the damage ought ever to have been in that predicament" and therefore the court examines the actions taken in the days preceding a hurricane to assist in such an analysis. *Boudoin v. J. Ray McDermott & Co.*, 281 F.2d 81, 82 (5th Cir. 1960) (discussing damage resulting from Hurricane Audrey).

## **LIABILITY OF THE DEFENDANTS**

1. Bordelon seeks to recover damages from the collective Defendants on the basis that LaShip was negligent in its mooring and storm preparations, and it is therefore liable for the Joshua Chouest's breakaway and the subsequent damage to the Shelia Bordelon.

2. The Court has found that Offshore Service Vessels did not own, manage, or operate either the Joshua Chouest or the LaShip facility on August 29, 2021 and therefore finds Offshore Service Vessels not liable with respect to this litigation.

3. The Joshua Chouest was a drifting vessel at the time of the allision with the Shelia Bordelon. Therefore, the Court finds that the *Oregon* presumption and the *Louisiana* presumption facially apply to this set of facts. These presumptions however are rebuttable by a showing that the allision or collision was the fault of the stationary object, that the drifting or moving vessel acted with reasonable care, or that the allision or collision was the fault of an unavoidable accident, that is, that the weather was heavy and "that the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills[.]'." *Combo Maritime*, 615 F.3d at 605; *James*, 686 F.2d at 1133;

*Petition of the United States*, 425 U.S. at 995. This showing is also known as the Act of God defense.

4. Defendants have successfully rebutted the foregoing presumptions, showing by a preponderance of the evidence that Hurricane Ida constituted an Act of God and that LaShip did all it reasonably could under the circumstances. Specifically, LaShip put forth evidence that the mooring of the Joshua Chouest was reasonable in light of the anticipated weather conditions posed by Hurricane Ida.

5. To demonstrate the heavy weather, Defendants offered meteorologist Craig Setzer as an expert who provided a report on the severity of Hurricane Ida. The undisputed evidence in this case reveals that Hurricane Ida tied the record for being the strongest hurricane to make landfall in the United States west of the mouth of the Mississippi River. Upon landfall, Ida's maximum sustained winds were 130 knots, or 150 miles per hour. The only other hurricane to tie this record was Hurricane Laura in 2020, but Laura struck Louisiana approximately 150 miles away and brought no hurricane winds to the Houma area. The only other hurricane to strike the Houma area with similar conditions was the August 1856 Last Island Hurricane. As Setzer reported, "No one alive at this location had ever experienced anything as powerful as Hurricane Ida." Expert Report of Meteorologist E. Craig Setzer, Exhibit 42, page 7.

6. Plaintiff did not refute the evidence presented on the strength and severity of Hurricane Ida. Plaintiff offered no evidence to suggest that Defendants could have or should have moved the Joshua Chouest out of the Houma area or out of the path of the hurricane, nor did Plaintiff offer evidence to suggest that Defendants could have or should have moored the Joshua Chouest at a different dock within the LaShip facility such that it would have

been further away from other moored vessels along the Slip. Plaintiff argued only that Defendants were not reasonable in light of the anticipated conditions and therefore were not entitled to the defense, but offered no evidence to support that assertion.

7. The Joshua Chouest was moored with fifteen lines total, constituting a mix of ten polypropylene ropes and five steel wires. While Plaintiff argued that mixed mooring line arrangements are unreasonable because of the varying breaking strengths and tension characteristics of the two materials, Defendants offered the report and testimony of engineering expert William Thomassie to refute this assertion. Thomassie testified that the specific arrangement used on the Joshua Chouest was reasonable because of the way the different materials operated in relation to one another. Specifically, he explained that the wire and the rope did not go from the same point on the vessel to the same point onshore, which is an arrangement that will not perform as well because you do not get the sum of the two lines. On the Joshua Chouest, however, "all the synthetic mooring lines were in one position doing one thing, and all of the steel mooring lines were more or less supplemental and in a different area doing something a little bit differently." Testimony, page 12, lines 7-10.

8. Plaintiff failed to offer evidence that refuted Thomassie's testimony and report as to the adequacy of the mixed mooring arrangement as used on the Joshua Chouest. Plaintiff did not offer an expert on engineering or mooring arrangements. Further, in cross examining Thomassie, Plaintiff failed to refute his conclusions that the mooring was sufficient but for Hurricane Ida's severe winds, which were strongest at the time of the breakaway.

9. The Court accordingly must find that Defendants in this case have shown by a preponderance of the evidence that the weather was heavy and that they took all the

reasonable precautions under the circumstances. Defendants have shown in this instance that the accident could not have been prevented by proper nautical skill or precaution and therefore Defendants are not liable to Plaintiff for the damage to the Shelia Bordelon. In this event, the Court does not reach the question of damages.

New Orleans, Louisiana, this 22nd day of November, 2023.

_____
United States District Judge